## McCoach's Case.

*Attorney-at-law—Suspension from practice—Misconduct.*

An attorney at law will be suspended from practice for a period of one year where the evidence shows that he received and retained fees for which he rendered no service; that he received money for cash bail, which he did not apply to that purpose; that he aided and abetted a client in removing liquor and secreting it; and that, in a proceeding against a client, he resorted to political influence in an effort to abort the proceedings.

Petition by Committee of Censors of the Law Association of Philadelphia under Rule of Court No. 215. C. P. No. 2, Phila. Co., March T., 1927, No. 14884.

*Shippen Lewis* and *Thomas Stokes*, for Committee of Censors.

*William I. Stanton*, for respondent.

STERN, P. J., and GORDON, JR., J., Dec. 12, 1927.—This is a petition for the disciplining of an attorney, filed by the Committee of Censors of the Law Association under Rule 215 of the Rules of Court.

The complaint of the Committee of Censors involves allegations of misconduct by the respondent in three instances. In two of these he is charged with having received and retained fees from clients for which he rendered no services, and in the third he is charged with having received money from a

client for cash bail, which he did not use for that purpose, but retained when its return was demanded.

The respondent has filed an answer to the charges, in which he claims that, with respect to the fees for which he is alleged to have rendered no services, services were rendered by him; while with respect to the money alleged to have been given for cash bail and to have been retained by him, he claims that, at the conclusion of the litigation in which the money was received, his client agreed that he should retain it in final settlement for his services therein. In addition, the respondent states in his answer that, notwithstanding his asserted right to retain the moneys received by him in each case, he has, since the initiation of this proceeding, returned to his respective clients the amounts in question.

At the hearing of this petition it was agreed that the testimony taken by the Committee of Censors should be considered as the evidence before us.

In the case relating to the complaint of Ella Cobb, the Committee of Censors has found as follows:

1. David McCoach has been a member of the bar of this court for at least ten years.

2. On or before Nov. 19, 1926, Ella Cobb filed her complaint with your petitioners, alleging that she had retained David McCoach as attorney to apply for a pardon for John L. Cobb, her son, who is in prison, that she had paid McCoach $100 and given him a note for $150 as a retainer and that he had rendered her no services.

3. Your petitioners have heard the testimony of the plaintiff and respondent and have found that David McCoach received the money and note as stated in the above complaint, that he has appropriated to his own use the money and proceeds of the note, and that he has rendered no services to his client.

We are not disposed to disagree with this finding of the committee. It should be noted, however, that the respondent claims that during the period covering this transaction he was sick, and that, so far as she was able, his wife attended to his professional matters for him. In addition, he claims, and in this respect is uncontradicted, that the agreement between him and Mrs. Cobb was that he would present the petition for a pardon upon the payment of a fee of $250, $100 of which was paid in cash and $150 by a note, which Mrs. Cobb has never paid. The respondent claims, also, that he did appear before Judge Davis, who had sentenced the prisoner, and asked for a parole, which was refused.

In the case relating to the complaint of Josephine Le Maire, the Committee of Censors has found as follows:

1. David McCoach has been a member of the bar of this court for at least ten years.

2. On or before June 9, 1926, Josephine Le Maire filed her complaint with your petitioners, alleging that she had retained David McCoach to institute divorce proceedings for her, that she had paid him $200 and that he had done nothing.

3. Your petitioners have heard the testimony of the complainant and of the respondent and have found that David McCoach received $200, as above stated, and that he has appropriated the money to his own use, without rendering any services to his client.

We agree with the findings of the Committee of Censors in this matter, with the additional observation that it would seem, from the testimony of the respondent, that the money was paid to his wife, who, as already noted,

was looking after his affairs while he was sick, and we are of opinion that the respondent's neglect of the case was occasioned, to some extent at least, by his illness and the confused condition of his affairs during that period.

In the case relating to the complaint of John Russell, the Committee of Censors has found as follows:

1. David McCoach has been a member of the bar of this court for at least ten years.

2. In the fall of 1924, John Russell, who then conducted a saloon at Broad Street and Washington Avenue, Philadelphia, was arrested, together with his bartender, Bart Gralia, on a charge of violating the liquor laws. Russell employed David McCoach to represent him and Gralia, and paid him a fee of $650, which was agreed by both to be in full payment for McCoach's professional services.

3. On Nov. 20, 1924, Magistrate Pennock held Russell and Gralia for court, and bail in the sum of $500 each was furnished by Thomas Shea, of No. 1542 Christian Street, Philadelphia. On Nov. 22, 1924, the grand jury ignored the bill of indictment against Russell and found a true bill against Gralia. On his trial, Gralia was acquitted.

4. At some time or times in November and December, 1924, and January, 1925, Russell paid McCoach $800 on the latter's demand for that sum to be used as cash bail in the criminal proceedings. In January, 1925, Russell paid McCoach a further sum of $500 on the latter's demand for that sum to be be used as security in certain equity proceedings for the padlocking of Russell's saloon.

5. McCoach did not use either of the said sums of $800 and of $500 in behalf of Russell, and on the conclusion of the said criminal and equity proceedings refused to repay the $1300 so received by him or any part thereof.

There is evidence to support these findings of the committee. They depend almost exclusively, however, upon the testimony of Russell, the complainant, who had retained the respondent to represent him in a prosecution for illegal possession of liquor. Russell's evidence is in many particulars contradictory, and, when viewed as a whole, is not of the most convincing character. There is little, if any, dispute upon the controlling facts of the case between the respondent and the complainant, Russell, as to the transactions between them. The respondent admits that he received the $1300 in question for cash bail and that he held it upon that trust. He contends, however, that during the progress of the transaction in which he was originally retained other litigation arose, and that he performed services of a rather extensive character. His position is that, when the whole matter was cleared up for his client, he, the respondent, thought he was entitled to further fees for the additional services rendered by him, and that when he spoke to Russell upon the subject, Russell instructed him to retain the $1300 in full satisfaction for all the services rendered in the case. This contention is contradicted by Russell. The Committee of Censors had the opportunity of seeing and hearing the witnesses, and we are inclined to adopt, and do adopt, the findings of the committee upon this point. In doing so, however, it may be observed that upon a cold reading of the testimony alone, it would be somewhat difficult definitely to decide this dispute between the parties.

There is another feature of the respondent's testimony which was not referred to by the Committee of Censors, and which we deem it our duty to comment upon. The respondent stated and admitted in his examination that, in the course of representing Russell, he committed two discreditable acts: First, during the night before an anticipated raid upon Russell's saloon by

McCoach's Case.

the police, he advised and aided Russell in removing therefrom liquor kept by him in violation of law, and in secreting these contraband goods; and, second, in the prosecution or prosecutions brought against his client, he resorted to political influence in an effort to abort the prosecutions.

The details of the respondent's activities in this regard are not told, but the inference from his testimony is sinister and alarming. It is scarcely necessary to comment upon such conduct as is disclosed by these two admissions. It is unworthy of the profession, and the lawyer who is guilty of it brings the administration of justice into disrepute and lays himself open to the gravest consequences. Were we satisfied that the respondent, when he committed these professional wrongs, was in full health and entirely responsible for his acts, we would without hesitation disbar him; and, in withholding such an order for the present, we do not wish to be understood as condoning such conduct to any extent. In view of the fact, however, that the respondent has returned to the various clients the fees and moneys which are in dispute, and of his undoubted serious sickness during this period, we deem that it will be sufficient to suspend him from the practice of law for such time as will serve to indicate to him, and to the bar, our condemnation of his conduct.

It is accordingly ordered that the said David McCoach, the respondent, be suspended from his office as attorney of this court for the period of one year from this date, and the prothonotary is directed to notify the prothonotary of the Supreme and Superior Courts of Pennsylvania and the Clerk of the Orphans' Court of Philadelphia County of this action.